AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
JARVIS LANARD MCCANTS and
TROY JEROME PERKINS

Defendant(s)

Case No. 8:17MJ1167 MAP

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of February 28, 2017 in the county of Manatee in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 21 U.S.C. § 846<br>21 U.S.C. §841(b)(1)(C) | Conspiracy to possess with intent to distribute a mixture and substance containing a detectable amount of fentanyl. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Joseph A. Pittaluga, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ~~2/28/17~~ 3/1/17

[signature]
*Judge's signature*

City and state: Tampa, Florida

MARK A. PIZZO, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Joseph A. Pittaluga, being duly sworn, state as follows:

### Introduction and Agent Background

1. I am a Special Agent of the Drug Enforcement Administration (DEA), Department of Justice. As such, I am "an investigative or law enforcement officer of the United States," as defined within Section 2510(7) of Title 18, United States Code (USC), and empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Sections 841(a)(1), 846 and 856.

2. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since August 2016. In September 2016, I attended the DEA's twenty-week basic agent training academy. Subsequent to graduation, I was assigned to the DEA Tampa District Office. I have a Bachelor of Science Degree in Criminal Justice from the University of South Carolina.

3. As part of my duties as a DEA Special Agent, I investigate drug trafficking organizations, including their smuggling routes and the techniques they use for transporting controlled substances such as marijuana, cocaine, methamphetamine and heroin. My duties include investigating drug trafficking organizations, interviewing witnesses, victims and suspects, identifying people involved, developing probable cause for cases, handling and processing various types of evidence, and assembling cases for prosecution. While attending the DEA Training Academy, I received specialized training in the identification of, the field-

testing of, and the investigation of illegal drugs and drug trafficking techniques. I have assisted other officers and detectives with controlled substance cases as evidence custodian, surveillance team member, photographer, entry / search team member, and handler of confidential & citizen informants. The training also encompassed investigation techniques, including conducting Title III wiretap investigations. I have participated in drug cases and controlled delivery cases, assigning and directing other officers in the investigations.

4. Prior to being a DEA Special Agent, I was a sworn law enforcement officer with the St. Petersburg Police Department, located in St. Petersburg, Florida, for approximately eleven (11) years. For approximately eight (8) of those years, I was assigned as a detective assigned to the St. Petersburg Police Narcotics Division. During that time, I testified in numerous judicial proceedings for the violation of controlled substance laws. I also received specialized training in illegal drug smuggling and distribution investigations. I participated in hundreds of illegal drug investigations and undercover operations. I debriefed, and participated in the debriefings of defendants, informants, and witnesses who had personal knowledge of major drug trafficking organizations. I participated in all aspects of drug investigations, including: undercover, operations, questioning of witnesses, the execution of search and arrest warrants, the use of undercover officers, the utilization of informants, conducting surveillance, analyzing information obtained from court-ordered pen register/trap and trace intercepts, and analyzing telephone toll information obtained as a result of administrative subpoenas issued by the DEA.

5. I have been involved in numerous drug investigations, which have resulted in numerous arrests and seizures of narcotics. I am familiar with the method of operation of drug buyers and sellers and with the "slang" or coded language used to describe drug transactions. During my career in law enforcement, I have conducted investigations involving the identification of co-conspirators through the use of telephone records and bills, financial records, drug ledgers, photographs, and/or other documents. I have directed numerous confidential informants to successfully infiltrate various narcotics enterprises through intelligence gathering, participation in consensual recordings, and/or controlled purchases of illegal drugs.

6. I have been involved in Organized Crime Drug Enforcement Task Force (OCDETF) drug conspiracy and distribution investigations. I have assisted in the investigation of major, complex cases to include illegal drug conspiracy investigations. In the past, I have conducted investigations of state and federal illegal drug violations. I have previously participated in state and federal wire investigations that intercepted drug trafficking crime organizations. In those investigations, my duties included, surveillance, analyze/interpret intercepted communications, and preparing and executing arrest and search warrants.

7. Based upon my training, experience and participation in these and other financial / drug trafficking investigations, and based upon my conversations with other experienced law enforcement agents and officers, with whom I work, I know the following:

a. In my experience, I have found that the distribution of controlled substances is frequently a continuing activity over months and years. Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, much as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product. It has been my experience that drug traffickers keep records of their illegal activities not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses / controls illegal controlled substances. The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money.

b. It is common for members of drug trafficking organizations to maintain records evidencing their illegal activities including books, ledgers, receipts, notes and other papers relating to the transportation, ordering, possession, sale and distribution of drugs and the collection and transportation of drug proceeds. I also know that the aforementioned books, records and ledgers, etc., are frequently maintained in the drug trafficker's residence and sometimes in the trafficker's vehicle(s).

**Statutory Authority**

8. I submit this affidavit in support of a criminal complaint charging **Jarvis Lanard MCCANTS and Troy Jerome PERKINS** with the following federal offense: conspiracy to possess with intent to distribute a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). The DEA is investigating this crime, which **MCCANTS** and **PERKINS** and others, both known and unknown, committed within the Middle District of Florida and elsewhere.

9. I submit only those facts I believe are relevant to determine probable cause. This affidavit is not a complete statement of all the facts of the investigation. I learned the following facts through consultation with other law enforcement officers, reviewing reports, my personal investigative efforts, as well as my experience and background. The source of information and the grounds for this belief are as follows.

**Investigation**

10. Throughout the end of 2016 and 2017, the DEA and Bradenton Police Department received information regarding **MCCANTS** and his drug trafficking activities. On February 16, 2017, United States Magistrate Judge Thomas G. Wilson signed a warrant authorizing law enforcement to search the residence of 117 10th Avenue West, Bradenton, Florida.

11. On February 28, 2017, law enforcement executed the Federal search warrant at 117 10th Avenue West, Bradenton, Florida. Prior to the execution of the warrant, surveillance was conducted of the residence. During the surveillance, DEA Special Agent Dexter McGee observed a black male, later identified as **PERKINS,** exit the residence on two separate occasions. Manatee County Sheriff's Office (MCSO) Detective Joseph Petta observed **PERKINS** meeting with two different persons for short periods of time in a church parking lot near the rear of the residence. **PERKINS** approached the vehicle, reached through the window of the vehicle out of view, and then walked away from the vehicle back towards the residence. Det. Petta was unable to identify what if any objects were passed between **PERKINS** and the other parties due to distance and location. I know from my training and experience that these types of transactions are indicative of street level narcotics distribution. Upon completion of the suspected hand to hand transactions, **PERKINS** would return to 117 10th Avenue West, Bradenton, Florida. **MCCANTS** was within the residence during these transactions.

12. DEA SA McGee also observed **MCCANTS** exit the residence and enter a black in color Nissan sedan. Surveillance was maintained on **MCCANTS** as he traveled south along 1st Street, pulling into a laundromat parking lot temporarily, and then continuing south along 1st Street. After a short period, **MCCANTS** turned around and traveled back to 117 10th Avenue West, Bradenton, backing into the parking area.

13. Around this time, law enforcement executed the search warrant at 117 10th Avenue West, Bradenton Florida. Law Enforcement agents approached **MCCANTS** wearing "POLICE" insignia. **MCCANTS** was still sitting within the driver's seat of the vehicle. Agents identified themselves, and ordered **MCCANTS** out of the vehicle. **MCCANTS** disregarded their commands and drove at a high rate of speed away from the property. Surveillance was maintained on **MCCANTS** until he struck another vehicle, causing a vehicle accident that resulted in the other driver going to the hospital. **MCCANTS** then exited the Nissan sedan and attempted to run from the scene on foot. After a short foot pursuit, **MCCANTS** was arrested by ATF Special Agent Yannick DesLauriers and MCSO Det. Joseph Petta.

14. At the same time that **MCCANTS** drove away from the residence, agents observed a black female, later identified as Shirley Perkins, exit the residence shutting the door behind her. SA Anthony Spatola observed Ms. Perkins open the same door to the residence. Agents ordered Ms. Perkins to the ground and then entered and secured the residence.

15. During a search of the residence, agents located narcotics, a firearm, and U.S. currency. Inside the first bedroom to the right side of the room as one enters and on top of a chest of drawers, agents located a plastic baggy containing approximately 22 grams of a brown powdery substance. TFO Mike Skoumal field tested the substance and received a positive result for fentanyl. The plastic baggy was sitting on top of a plate with multiple small jeweler type Ziploc bags and a small

straw. To the right of the plate agents located a digital scale with residue. In the top drawer of the same chest of drawers, agents located an undetermined amount of U.S. currency rubber banded together, a small plastic baggy containing approximately 3 grams of a brown powdery substance (field tested by TFO Skoumal and yielded a positive result for fentanyl), approximately 3.3 grams of a white chalky substance (field tested by SA Brandon Cain and yielded a positive result for cocaine), and a wallet containing **Troy Jerome PERKINS** driver's license. Within the same bedroom agents located a Bersa .380 caliber pistol under the bed in a black lock box. The pistol had a magazine inserted in it and the magazine contained seven rounds of ammunition. Sitting on top of the bed, agents located multiple cellular phones.

16. In the second bedroom law enforcement located approximately 21.5 grams of a white chalky substance in the top drawer of the night stand, and approximately 2.1 grams of a powdery white substance in the void under the night stand. TFO Skoumal later conducted field tests of both substances and received positive results for cocaine. Within the same nightstand drawer law enforcement located a small yellow piece of paper with "JMCCANTS1988@icloud.com" hand written on it that was wrapped around a cellular phone sim card.

17. SA Cain read **MCCANTS** his *Miranda* rights. **MCCANTS** stated that he did not live in the residence but that he had been staying there. Shortly thereafter **MCCANTS** requested to speak with an attorney.

18. SA Cain read Shirley Perkins her *Miranda* rights. Ms. Perkins confirmed that the residence belonged to her and that her two sons, **Troy Jerome PERKINS** and **Jarvis Lanard MCCANTS**, reside at the residence with her. Ms. Perkins stated that **Troy Jerome PERKINS** stayed within the bedroom on the right side of the residence, indicating the bedroom that the approximate 22 grams and 3 grams of brown powdery substance were found. Ms. Perkins stated that **MCCANTS** was staying within the left side bedroom, indicating to the bedroom where the approximate 21.5 grams of crack cocaine and 2.1 grams of powder cocaine were located. Ms. Perkins stated she was not aware of any illegal narcotics or weapons within the residence.

19. SA Cain read **Troy Jerome PERKINS** his *Miranda* rights. **PERKINS** initially stated that he was not aware of any illegal narcotics within the residence. **PERKINS** confirmed that he resided in the bedroom where the approximate 22 grams and 3 grams of brown powdery substance were located. **PERKINS** also confirmed that **MCCANTS** resided in the opposite bedroom, but that **MCCANTS** utilized his bedroom also. Upon SA Cain confronting **PERKINS** with the morning's surveillance observations of **PERKINS**, **PERKINS** recanted and stated that he had completed transactions with two individuals under the direction of **MCCANTS** at the park behind the residence. **PERKINS** also stated that the fentanyl found within his bedroom belonged to **MCCANTS** and that he only met with those persons under **MCCANTS'** direction.

**Conclusion**

20. For the reasons set forth above, I believe that probable cause exists to believe that **Troy Jerome PERKINS** and **Jarvis Lanard MCCANTS** committed the following federal offense: conspiracy to possess with intent to distribute a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 846 and 841 (b)(1)(C).

FURTHER AFFIANT SAYETH NAUGHT.

Joseph A. Pittaluga, Special Agent
Drug Enforcement Administration

Subscribed and sworn before me
This 1st day of March, 2017.

MARK A. PIZZO
United States Magistrate Judge

T:_Cases\Criminal Cases\M\MCCANTS, Jarvis_2016R01495_SSH\f_Complaint MCCANTS and PERKINS.docx